IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LEONARD J. HOLIDAY, ) | |
| Reg. No. 07758-003, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:17-CV-2-ECM-JTA |
| ) | [WO] |
| CO CRUSHINK, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Leonard Holiday ("Holiday") files this *pro se* action under 42 U.S.C. § 1983 claiming that Defendants acted with deliberate indifference to his safety by failing to protect him from an inmate assault. Holiday alleges that while incarcerated at the Draper Correctional Facility on December 11, 2016, an inmate assigned to another dorm was allowed to enter Holiday's dorm and stab him multiple times. Named as Defendants are Lieutenant Valerie Pittman ("Pittman"), Sergeant Jeffery Wiggins ("Wiggins"), and Correctional Officers Joshua Cruikshank ("Cruikshank"), Michael Davis ("Davis"), Calvin Morris ("Morris"),[1] and Ricky Mays ("Mays"). Holiday seeks damages for the alleged violation of his constitutional rights and a federal criminal investigation into the incident.[2] Doc. 1.

---

[1] In the complaint, Holiday incorrectly identified Officer Cruikshank as Officer "Crushink" and incorrectly identified Officer Mays as Officer "Maze." Holiday also named "CO Marvin" as a defendant. On June 21, 2017, the court granted Holiday's motion to correct the identity of "CO Marvin" to Defendant Morris. Docs. 24, 26.

[2] The court notes that "[t]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dept. of Soc. Svs.*, 489 U.S. 189, 196 (1989). *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (explaining that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another"); *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014) ("The law is clear

Defendants filed answers, special reports, supplemental special reports, and supporting evidentiary materials addressing Holiday's claims for relief. Docs. 23, 34, 40, 44, 48, 49. In these filings, Defendants deny they acted in violation of Holiday's constitutional rights. *Id.* Upon receipt of Defendants' special reports, as supplemented, the court entered an order which provided Holiday an opportunity to file a response to Defendants' reports. Doc. 50. This order advised Holiday his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 50 at 2. The order further cautioned Holiday that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion . . . in accordance with law." Doc. 50 at 2. Holiday responded to Defendants' reports, *see* Doc. 53, but his response does not demonstrate there is any genuine dispute of material fact. The court will treat Defendants' special reports, as supplemented, as motions for summary judgments (Docs. 23, 34, 40, 44, 48 49), and resolve these motions in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th. Cir. 2007) (per

---

that inmates do not enjoy a constitutional right to an investigation of any kind by government officials."). Accordingly, Holiday is not entitled to this requested relief.

curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322–324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Holiday to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593–594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ*., 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Holiday's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

**A.    Sovereign Immunity**

To the extent Holiday sues Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities. *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Depart. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

**B.     Qualified Immunity**

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted).  To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the incidents occurred. Holiday must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Holiday must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader,

clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

**C.    Deliberate Indifference**

   *1.    Standard of Review*

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (citations and quotation marks omitted). Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows

that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Id.* at 828. "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit, however, has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and quotation marks omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . .

7

exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient"); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834-38, 114 S. Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also draw that inference. *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the

8

time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotation marks omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (citation and quotation marks omitted).  In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge, consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Holiday must first demonstrate an objectively substantial risk of serious harm existed to him prior to the inmate attack at issue and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted). If he establishes these objective elements, Holiday must then satisfy the subjective component. To do so, Holiday "must [show] that the defendant subjectively knew that [Holiday] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he[/she] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a ***particular threat or fear felt by [the] [p]laintiff***. *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-

>official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference. *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (quotation marks omitted) (emphasis in original).

### 2. *Failure to Protect*

Holiday alleges that on December 11, 2016, Defendants acted with deliberate indifference to his safety regarding an attack on him by an inmate assigned to another dorm who managed to exit his dorm during the third shift lockdown hours. Holiday was asleep when the assault occurred. He claims the assault occurred because of understaffing and a failure to resolve the staff shortage or provide adequate security at the time of the incident. Holiday maintains Defendants allowed his attacker to move freely without questioning him which allowed him to gain entry to Holiday's dorm and assault Holiday with a knife. The conduct and actions of Defendants, Holiday claims, violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment rights to due process and equal protection against such "harsh and unsecure conditions" of incarcerated individuals.[3] Doc. 1 at 2–3.

Defendants maintain that Holiday has not demonstrated they acted with deliberate indifference to his safety. Defendants' evidence includes Defendants' affidavits and other prison records. Cruikshank states on December 10, 2016, he was assigned to I-Dorm at 10:00 p.m. He denies letting any unauthorized inmates into I-Dorm and states he roved both the upper and lower tiers of the dorm continually during his shift. Wiggins denies letting inmates into I-Dorm, denies

---

[3] Although Holiday invokes the Fourteenth Amendment, the court finds review of the allegations presented is properly addressed under the Eighth Amendment. *See generally Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("While a complaint does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation and quotation marks omitted).

noticing any inmates in I-Dorm who were not supposed to be there, and maintains there were no inmates roaming the hallways during the lockdown period. Mays, who was assigned to the kitchen on December 10, 2016, at 10:00 p.m., denies any knowledge of inmates roaming the hallways, and states he let no inmates in or out of any cell blocks. Davis was assigned to A-Dorm on December 10, 2016. He denies allowing any inmate assigned to other cell blocks to enter the hall or other dorms. Davis further denies allowing any inmate to rove the hall or move freely from dorm to dorm.[4] Regarding the incident, Cruikshank testifies that:

> [a]t approximately 5:21 a.m., Sergeants Jeffrey Wiggins, Justin McDonald, Officers Rickey Mays, and Michael Davis reported to I-Dorm upstairs where I reported that inmate Leonard Holiday had been assaulted.
>
> Sgt. McDonald observed inmate Jarmon Barrow standing at the front of I-Dorm with a puncture wound to his right leg. Sgt. McDonald handcuffed inmate Barrow with both hands to the rear and escorted him to the inmate barber shop.
>
> Officer Davis observed inmate Walter Tate running upstairs. Officer Davis stopped inmate Tate and handcuffed him to the rear and conducted a search of his person. During the search, Officer Davis confiscated a cellular telephone. Officer Mays escorted inmate Tate to the Restrictive Housing Unit. Sgt. Wiggins observed inmate Holiday with several punctures wounds to his face, neck, and back.
>
> Inmate Holiday was standing by the upstairs bathroom with an inmate made ice pick and a broken broom handle, pacing back and forth yelling, "Where did he go." Sgt. Wiggins instructed inmate Holiday several times to place the weapons on the floor. Inmate Holiday failed to comply with the directive. Sgt. Wiggins deployed

---

[4] Defendant Morris states he is unaware of an incident which occurred with Holiday on December 11, 2016. Doc. 49-1. Defendant Pittman also disclaims any knowledge of the incident about which Holiday complains and asserts she was not at work on December 10, 2016. Doc. 23-2. Defendants have submitted a duty roster for the third shift on December 11, 2016. It appears the duty roster reflects guard post assignments beginning at 10 p.m. on December 11, 2016 and ending at 6:00 a.m. the following day. Doc. 34-3. Holiday correctly notes that the names of both Pittman and Morris appear on the December 11 duty roster, but it appears the roster submitted by Defendants does not reflect guard assignments during the time the incident about which Holiday complains occurred, but rather, reflects guard assignments much later that day. Additionally, the reference in some of Defendants' affidavits to December 10, 2016, as the day of the incident is likely attributable to when they began their tour of duty. According to Defendant Cruikshank, he was assigned to I-Dorm at 10:00 p.m. on December 10, 2016. Doc. 23-1. As noted, the incident about which Holiday complains occurred early the next morning on December 11, 2016. *See* Docs. 23-1, 23-2, 23-4, 23-5, 44-1, 44-2, 44-3, 48-1. Based on the duty roster submitted by Defendants, shifts beginning at 10 p.m. normally ended at 6:00 a.m. Doc. 34-3.

> his Sabre Red, yelled, "Gas" and dispersed a burst of the chemical agent across inmate Holiday's the facial area. Inmate Holiday dropped the weapons.
>
> Sgt. Wiggins retrieved the weapons from the bathroom floor while Officer Davis handcuffed inmate Holiday with both hands to the rear. Sgt. McDonald and Officer Davis immediately escorted inmate Holiday to the Restrictive Housing Unit for decontamination. Inmate Holiday was provided access to water, soap, and circulating air for decontamination purposes. Sgt. McDonald and Officer Davis escorted inmate Holiday to the Staton Health Care Unit for a medical assessment.
>
> Sgt. McDonald telephoned Sgt. Wiggins and advised that inmate Holiday needed to be transported via ambulance to Baptist South Hospital, per medical staff. Inmate Holiday was transported via ambulance to Baptist South Hospital at approximately 6:00 a. m.
>
> I roved both down stairs and upstairs continually throughout my shift and was unaware of any unauthorized inmates roaming the hallway.

Doc. 48-1 at 1–3; *see also* Docs. 44-1, 44-2, 44-3.

The parties do not dispute that Holiday had no documented enemies prior to the December 11, 2016 incident. Doc. 40-1 at 1; Doc. 53 at 4. After the assault, Holiday and inmate Barrow were validated as enemies by Draper's enemy validation committee. Doc. 34-2.

Here, Holiday does not allege he complained to any prison official he was in danger of being attacked by inmate Barrow—rather—he acknowledges his unawareness of being in any danger prior to the attack and states during his twenty-five years of incarceration he never had any enemies. Doc. 53 at 4. It is thus undisputed that Defendants had no information of any threat to Holiday from inmate Barrow from which they could infer that a substantial risk of harm existed to Holiday prior to the attack at issue. Instead, the record establishes that the altercation occurred without notice or provocation when inmate Barrow proceeded to Holiday's sleeping area in the early morning hours on December 11, 2016, and stabbed Holiday as he slept. There is no evidence any correctional officer witnessed the assault and the first knowledge correctional officials received regarding the fight occurred when Cruikshank reported that Holiday had been assaulted.

12

Doc. 48-1 at 1–3; Doc. 49-3 at 2.  Holiday has also not shown that the conditions under which he was incarcerated presented a "substantial risk of harm" to him, *Farmer,* 511 U.S. at 834, to which Defendants responded in an objectively unreasonable manner, *Marsh,* 268 F.3d at 1028–1029.  Accordingly, Holiday's conclusory allegation of harsh and unsecure conditions is insufficient.  Doc. 53 at 4.

Even had Holiday satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any defendant subjectively knew of a risk of harm to him posed by inmate Barrow.  Holiday's contention that Wiggins told him that an officer in I-Dorm had to unlock the cell bars to let Inmate Barrow "in to do what had happened to me" (Doc. 53-1 at 2), is not evidence that any defendant knew he faced a substantial risk of harm.  *Caldwell,* 78 F.3d at 1099–1100 (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").  Further, and without disputing that inmate-on-inmate assaults occur in the correctional system, even assuming the institutional facility was experiencing understaffing or overcrowding at the time of the assault on Holiday, such is insufficient to establish Defendants knew a substantial risk of serious harm existed and, with such knowledge, deliberately failed to prevent the harm.  *Johnson*, 568 F. App'x at 722 (explaining that complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]"); *Harrison v. Culliver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (observing that although increasing the number of officers in an area of the facility "may have improved security [at the prison, the warden's] decision not to do so did not create a substantial risk of harm."); *Johnston*, 135 F. App'x at 377 (observing that where allegations simply

inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt"); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (explaining that "because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails"); *Staley v. Owens*, 367 F. App'x 102, 108 (11th Cir. 2010) (explaining that plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over several years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to").

The record is devoid of evidence Defendants knew specific facts from which an inference could be drawn that a substantial risk of harm existed to Holiday, that Defendants actually drew this inference, and, thereafter, ignored the known risk. Here, Holiday has not presented facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial risk of harm. Rather, the evidence indicates that inmate Barrow's attack was a sudden, isolated incident. *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (explaining that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat' from [his inmate attacker], which he then reported to [the defendants] prior to [the attack]"); *Brown*, 894 F.2d at 1537 (holding that "negligent failure to protect an inmate from attack does not justify liability under § 1983"). Inmate Barrow's assault

14

on Holiday was an unfortunate event. It does not, however, reflect deliberate indifference by Defendants. The evidence reflects the events complained of unfolded quickly. Correctional officers responded to the incident upon becoming aware of the situation. Holiday received prompt medical care and attention, and correctional personnel immediately reported the incident to the Warden, the I&I Investigator, and the on call correctional official at Draper. Doc. 49-3 at 2.

Because Holiday has failed to show Defendants actually knew that a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. *Carter*, 352 F.3d at 1350. Since the record fails to demonstrate that the incident between Holiday and inmate Barrow occurred due to any deliberate indifference or reckless disregard by Defendants, they are entitled to qualified immunity on Holiday's failure to protect claim in their individual capacities.

### 3. *Failure to Intervene*

Holiday's claim there was no guard in the area of the attack when it occurred so the guards failed to intervene entitles him to no relief as liability attaches only if a defendant was in a position to intervene in the altercation. The undisputed evidence reflects that when the physical altercation occurred between Holiday and inmate Barrow, Cruikshank was continuously roving the tiers in I-Dorm and was unaware of any unauthorized inmates roaming the hallways. Defendants Wiggins, Mays, and Davis likewise saw no inmates roaming the hallways, did not allow inmates from one dorm to access the hall to other dorms, and/or did not "allow" inmates to rove or move freely among dorms. They were performing their assigned duties at this time. Docs. 23-1, 23-3, 23-4, 23-5.

Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. *Ensley v. Soper*, 142 F.3d

1402, 1407 (11th Cir. 1998). However, in order for liability to attach, the officer must have been in a position to intervene. *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010). An officer who fails to intervene in a fight between inmates can "only be held liable if he/she was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff." *Glispy v. Raymond*, 2009 WL 2762636, at *3 (S.D. Fla. Aug. 28, 2009) (*citing Ensley*, 142 F.3d at 1407; *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)); *see also Seals v. Marcus*, 2013 WL 656873, at *7 (M.D. Ga. 2013). Holiday has the burden of demonstrating a defendant was in a position to intervene but failed to do so. *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (*citing Hadley v. Gutierrez*, 526 F.3d 1324, 1330–1331 (11th Cir. 2008)).

Here, Holiday contends that had Cruikshank continually roved the upper and lower tiers of the dorm he would have caught inmate Barrow. *See* Doc. No. 53 at 7. Holiday's conclusory assertion, however, is insufficient to demonstrate that Cruikshank or any other defendant or correctional officer was in a position to intervene when the assault occurred. Because Holiday fails to allege much less indicate that any defendant was in a position to intervene and act in time to stop inmate Barrow's attack, Defendants are entitled to qualified immunity in their individual capacities on this claim.[5]

## D.    Violation of Agency Regulations

To the extent Holiday alleges the inmate attack on him occurred because Defendants violated agency rules or regulations, he is entitled to no relief. While Holiday does not identify the rule or regulation he contends Defendants violated, infringements of agency rules, regulations

---

[5] The court has liberally construed the complaint to contain a "failure to intervene claim" and addressed this contention in accordance with various panel opinions of the Eleventh Circuit which rely on *Ensley* to review this type of claim. The court is aware that the Eleventh Circuit in *Johnson v. Boyd,* 568 F. App'x at 722 n.2, noted "[w]hile it is well settled that *Ensley* applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force, we have not explicitly adopted this holding in a situation involving an officer observing a fight between inmates."

16

or procedures do not, standing alone, amount to constitutional violations. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) (recognizing that allegations of a violation of statutory or administrative provisions did not provide the basis for a claim of violation of a constitutional right); *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (observing that mere fact governmental agency's regulations or procedures may have been violated does not, alone, raise a constitutional issue); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that a claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres*, 440 U.S. 741, 751-752 (1979) (finding mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley*, 316 F. App'x 300, 303 (4th Cir. 2009) (same); s*ee also Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by its law is not a federal violation). Defendants are entitled to qualified immunity on this claim.

**E.     Supplemental Jurisdiction**

To the extent Holiday seeks to bring state law claims, review of such claims is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, exercising such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (citations omitted). Exercising supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even

requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428; *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (noting that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well") (citation and quotation marks omitted). Because of this court's resolution of the federal claims in the complaint, Holiday's supplemental state law claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions for summary judgment (Docs. 23, 34, 40, 44, 48 49) be GRANTED;

2. Plaintiff's supplemental state law claims be DISMISSED without prejudice;

3. This case be DISMISSED with prejudice;

4. Judgment be ENTERED in favor of Defendants;

5. No costs be taxed.

It is further

ORDERED that **on or before February 13, 2020**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo*

determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 30th day of January, 2020.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE